IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSE RAMOS,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 8:25-2052-CDA |
| **DIGITAL PROSTHODONTICS, LLC,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \*

**MEMORANDUM OPINION GRANTING
JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT**

THIS MATTER is before the Court on the joint motion to approve the settlement agreement in this Fair Labor Standards Act ("FLSA") action filed by Plaintiff Jose Ramos against Defendants Digital Prosthodontics, LLC, Amir Juzbasic, and Igor Kachanovskiy (collectively, "Defendants"). (ECF 17.) The parties also seek a forty-five day stay to permit completion of obligations created by their agreement. For the reasons explained below, the Court will GRANT both motions.

**I.   BACKGROUND**

*A.   Factual and procedural background*

This case arises from allegations that Defendants failed to pay Plaintiff overtime pay. *See* Compl., ECF 1, at ¶¶ 10-16. Plaintiff, a dental laboratory technician, has worked for Defendants since May 2023. *Id.* at ¶ 10. Plaintiff maintains that despite his working between 50 and 54 hours per week, Defendants failed to maintain time records or compensate his overtime. *Id.* at ¶¶ 14, 16. Plaintiff filed this action on June 27, 2025,

asserting claims under the FLSA and the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-413, 3-420. *See* Compl. at ¶¶ 17-32. Before the deadline for Defendants' responsive pleading, the parties filed the pending Joint Motion for Settlement Approval. ECF 17.

### B. *The proposed settlement agreement*

The parties' Joint Motion to Approve FLSA Settlement Agreement includes a copy of the Settlement Agreement and records of Plaintiff's counsel's attorneys' fees and costs. *See* ECFs 17, 17-1, 17-2. The settlement agreement reflects the parties' desire to resolve the lawsuit to avoid "the additional cost and expense" of further litigation. ECF 17-1, at 1. The agreement is the fruit of two months of negotiations. ECF 17, at 2. In exchange for Defendants' payment of $36,755.00, Plaintiff agrees to a full release of "all claims that were or could have been brought by Ramos" from the "beginning of time to" the date of the agreement, whether such claims were "asserted or unasserted" against the Defendant. ECF 17-1, at 1, 3, 4. However, the release excludes (1) "claims that cannot be released by law" and (2) "any rights or claims that may arise after the execution date of this Agreement and prior to Ramos's Resignation Date" (which is set forth elsewhere). *Id.* at ¶ 8.c. The parties agreed to allocate $6,600 of the settlement amount to Ramos' wages and liquidated damages, $6,900 to Ramos' severance pay, and $13,000 to plaintiff's counsel's attorneys' fees and costs. *Id.* at ¶ 2.

The Joint Motion includes Plaintiff's counsel's time entries, which show that eight individuals expended 42.8 hours. *See* ECF 17-2, at 1-7. After some reductions, counsel billed Plaintiff for 37 hours for a total charge of $15,618.50. *Id.* at 7. Counsel also incurred $899.75 in costs such as filing and service. *Id.* The total bill to plaintiff is $16,518.25. *Id.* Based on the Settlement Agreement's earmarking of $13,000 for

attorneys' fees and costs, the parties agree to attribute $12,100.75 to fees and $899.75 to costs.  ECF 17 at 9.

## II.     LEGAL STANDARD

The FLSA "protect[s] workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014).  As a result, "except in two narrow circumstances," *Beam v. Dillon's Bus Serv., Inc.*, No. DKC-14-3838, 2015 WL 4065036, at *2 (D. Md. July 1, 2015), "the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement[,]" *Hackett v. ADF Rests. Invs.*, 259 F. Supp. 3d 360, 364 (D. Md. 2016).  One narrow circumstance exists when the court "approve[s] a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to [29 U.S.C. § 216(b).]" *Beam*, 2015 WL 4065036, at *2.  Courts will approve the settlement as long as it "reflects a reasonable compromise of disputed issues" and is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Duprey*, 30 F. Supp. 3d at 407 (internal quotation marks and citations omitted).  This standard is met when the settlement "reflect[s] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions[.]" *Id.* at 408 (quoting *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013) (internal quotation marks and citation omitted)).

Courts in the Fourth Circuit generally employ a three-step process in deciding whether a settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.  First, the court must determine "whether there are FLSA issues actually in dispute[.]" *Duprey*, 30 F. Supp. 3d at 408.  Second, the court must consider "the fairness and reasonableness of the settlement in light of the relevant factors from [Federal

3

Rule of Civil Procedure 23.]" *Id.* Third, the court must contemplate "the reasonableness of the attorneys' fees, if included in the agreement." *Id.*

### III. ANALYSIS

For the following reasons, the Court GRANTS the Joint Motion to Approve FLSA Settlement Agreement. The Court also GRANTS Plaintiff's motion to retain jurisdiction for the purpose of enforcing the Settlement Agreement.[1]

*A. There is a bona fide dispute regarding FLSA provisions.*

"In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the court examines the pleadings in the case, as well as [] the representations and recitals in the proposed settlement agreement." *Hackett*, 259 F. Supp. 3d at 365. A *bona fide* dispute exists "when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009); *see, e.g., Prudencio v. Triple R. Constr. Corp.*, No. 22-1202-BAH, 2024 WL 1557205, at *3-4 (D. Md. Apr. 10, 2024) (finding a *bona fide* dispute where the parties disagreed over whether the employer failed to pay the employee overtime wages); *Mendoza v. Filo Café, LLC*, No. 23-2703-AAQ, 2024 WL 964226, at *2 (D. Md. Mar. 5, 2024) (finding a *bona fide* dispute where the parties disagreed over whether the employee worked overtime hours and whether the employer failed to pay the employee overtime wages).

---

[1] Retention of jurisdiction is a common practice in this District in FLSA cases resolved by settlement agreement. *See, e.g., Berman v. Mid-Atlantic Eateries, Inc.*, No. ABA-23-2840, 2024 WL 3597191, at *5 (D. Md. July 31, 2024); *Flores v. Diverse Masonry Corp.*, No. 23-3215-LKG, 2024 WL 2863575, at *7 (D. Md. June 6, 2024); *Santos v. E&R Servs., Inc.*, No. ABA-20-2737, 2024 WL 1416564, at *5 (D. Md. Apr. 2, 2024); *Smith v. David's Loft Clinical Programs, Inc.*, No. 21-3241-LKG, 2022 WL 16553228, at *8 (D. Md. Oct. 31, 2022).

In this case, the parties disagree regarding whether Plaintiff was an employee exempt from overtime provisions and whether, like in *Mendoza*, Plaintiff worked overtime. ECF 17 at 2, 4-5. These disagreements represent a *bona fide* dispute.

*B. The settlement is fair and reasonable.*

Courts evaluate the fairness and reasonableness of a settlement by considering the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel[;] and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Duprey*, 30 F. Supp. 3d at 409 (internal quotation marks and citations omitted). "Parties may settle an FLSA case at an early stage provided that a plaintiff has had sufficient opportunity to evaluate the viability of [their] claims and the potential range of recovery." *Hackett*, 259 F. Supp. 3d at 366.

Litigants may satisfy this standard by, among other things, exchanging records and engaging in extensive settlement negotiations for the purpose of avoiding the significant expense of future litigation. *See, e.g.*, *Li v. Escape Nails & Spa, LLC*, No. DKC-23-1487, 2025 WL 460752, at *2 (D. Md. Feb. 11, 2025) (finding a settlement fair and reasonable where the parties "participated in 'extensive negotiations,'" had a "sufficient opportunity to obtain additional evidence through informal discovery," and agreed to settle for the purpose of avoiding "a lengthy and costly litigation process"); *Barnes v. Marriott Int'l, Inc.*, No. 20-3205-PX, 2021 WL 3112453, at *2 (D. Md. July 22, 2021) (finding a settlement fair and reasonable where the parties exchanged pay records and negotiated for weeks for the purpose of avoiding future litigation costs); *Villarroel v. Sri Siva Vishnu*

*Temple*, No. GJH-I-T-2617, 2014 WL 7460967, at *2 (D. Md. Dec. 31, 2014) (finding settlement fair and reasonable where the parties exchanged pay records and held "significant negotiations" for the purpose of avoiding the "significant expenses" associated with "formal discovery, dispositive motions, and possibly trial"). A "sufficient exchange of relevant information" enables the parties to make knowing and informed decisions supporting a fair and reasonable settlement. *Wade v. CBH Health, LLC*, No. PX-20-3573, 2021 WL 8269082, at *3 (D. Md. Oct. 15, 2021); *see also Mendoza*, 2024 WL 964226, at *2 (assessing whether "sufficient information" allowed the parties "to make informed, intelligent decisions"); *Hackett*, 259 F. Supp. 3d at 366 ("[T]hough no formal discovery took place, . . . the informal exchange of information between [the] parties has allowed them to appropriately ascertain facts and evaluate the strength of their respective positions[.]").

Courts scrutinize releases of claims, which are hallmarks of non-FLSA settlement agreements. "[A] general release of claims beyond those specified in the Complaint . . . can render the [FLSA settlement] unreasonable." *Duprey*, 30 F. Supp. 3d at 410. However, courts are "not required to evaluate the reasonableness of the settlement as it relates to non-[FLSA] claims if the employee is compensated reasonably for the release executed." *Villarroel*, 2014 WL 7460967, at *3 (citing *Duprey*, 30 F. Supp. 3d at 410). A settlement amount representing 85% of a plaintiff's estimated recovery may be "a reasonable compromise" that accounts for "the risks and costs associated with proceeding further and [the opposing party's] potentially viable defenses." *Saman*, 2013 WL 2949047, at *5 (internal quotation marks and citation omitted); *see Corea v. SLDB, LLC*, No. 18-1120-PX, 2018 WL 4829147, at *2 (D. Md. Oct. 4, 2018) (finding 85% of estimated recovery to be fair and reasonable); *Beam*, 2015 WL 4065036, at *4 (63%, 59%, and 74%

of recoveries were fair and reasonable); *Villaroel*, 2014 WL 7460967, at *2 (75% of estimated recovery); *Saman*, 2013 WL 2949047, at *5 (84.4% of estimated recovery). Courts look more favorably on releases that do not broadly discharge parties from any and all liability. *See Llamas Lopez v. Amerigal Constr. Co., Inc.*, No. PJM-15-520, 2015 WL 2127342, at *3 (D. Md. May 4, 2015) (finding a release fair and reasonable where the provision did not "broadly releas[e the employer] from all liability" but instead pertained "only to wage-related claims that arose prior to the settlement agreement").

Considering these principles and the Court's rulings in similar circumstances, the Court finds the settlement terms fair and reasonable. As in *Li*, *Barnes*, *Villarroel*, and *Saman*, the parties exchanged pay records and participated in negotiations for "several weeks"—a process that avoiding the significant expense attendant to depositions, formal written discovery, and further litigation. ECF 17, at 2, 5-6. The parties also represent that the records have allowed Plaintiff's counsel to estimate his potential recovery. *Id.* at 5. Therefore, the Court concludes that the parties possessed sufficient information to make informed, intelligent decisions and a sufficient opportunity to evaluate the viability of the claims, potential defenses, and the potential range of recovery. Furthermore, the settlement provides Plaintiff 100% of what his counsel estimates he could receive at trial. Considering that courts have found terms reasonable when a plaintiff receives 85% of their potential recovery, an agreement that provides the best outcome will be approved.

The Settlement Agreement contains a general release, which draws scrutiny. However, the settlement amount reflects reasonable compensation for the release of Plaintiff's FLSA claim. As a result, the Court need not inquire into the reasonableness of the Settlement Agreement as it relates to non-FLSA claims. *Villarroel*, 2014 WL 7460967, at *3. Even so, the Court notes that the release does not broadly absolve defendants from

any and all liability; it preserves rights that cannot be released by law or that arose after the settlement date.

Other factors support the Court's conclusion on fairness and reasonableness. First, Plaintiff's counsel have significant experience litigating FLSA claims. *See, e.g.*, *Sutton v. Capital City Motorsports LLC*, No. 24-1665-AAQ, 2025 WL 385773, at *3 (D. Md. Feb. 4, 2025); *Menendez v. William III, Inc.*, No. 24-261-AAQ, 2024 WL 5126733, at *4 (D. Md. Dec. 17, 2024); *Hernandez v. Nelson Precast Prods., LLC*, No. 21-2814-LKG, 2023 WL 7089919, at *5 (D. Md. Oct. 26, 2023). Second, counsel for both parties represent that the settlement is in the best interests of their clients. *See Menendez*, 2024 WL 5126733, at *4 ("Counsel's opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement."). Third, there is no evidence of fraud or collusion. *See Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). Finally, the settlement "does not contain provisions requiring its terms to be kept confidential nor has any request been made to seal." *Hackett*, 259 F. Supp. 3d at 364; *see also Escalante v. Tobar Constr., Inc.*, No. 18-0980-GLS, 2019 WL 13177822, at *4 (D. Md. Nov. 1, 2019) ("A confidentiality clause in an FLSA settlement agreement is 'not permitted without compelling reasons.'" (quoting *Salamone v. Balt. Diamond Exch., Inc.*, No. JKB-14-1507, 2014 WL 2930788, at *1 (D. Md. June 27, 2014))); *Carpenter v. Colonial Mgmt. Grp., LP*, No. JKB-12-686, 2012 WL 2992490, at *2 (D. Md. July 19, 2012) ("[A] court should not allow a[n] FLSA settlement agreement to be filed under seal except in the very limited circumstance where parties can make a substantial showing that their need to seal the agreement outweighs the strong

presumption of public access that attaches to such judicial documents." (internal quotation marks and citation omitted)).

  C. *Based on the consent of the parties and the circumstances of the case, the attorneys' fees and costs award is reasonable.*

Prevailing parties are entitled to attorneys' fees under the FLSA. *See* 29 U.S.C. § 216(b). Attorneys' fees may be determined by a settlement agreement. *See, e.g., Flores*, 2024 WL 2863575, at *5; *Prudencio*, 2024 WL 1557205, at *5; *Hernandez*, 2023 WL 7089919, at *6; *Barnes*, 2021 WL 3112453, at *3. Importantly, a "prevailing party is entitled to attorneys' fees *in addition* to damages." *Duprey*, 30 F. Supp. 3d at 411 (emphasis in original). In other words, attorneys' fees "should be negotiated separately from" damages, such that "the wronged employee should receive his full wages plus the liquidated damages penalty without incurring any expense for legal fees or costs." *Hackett*, 259 F. Supp. 3d at 367 (internal quotation marks and citations omitted).

 A court must conduct an independent assessment of a separately negotiated attorneys' fee to ensure reasonableness. *Id.* To facilitate this assessment, fee requests must be accompanied by details including "'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *2 (D. Md. Aug. 20, 2019) (quoting *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. June 23, 2016)). Courts employ the traditional lodestar method in evaluating the reasonableness of a fee. *Hackett*, 259 F. Supp. 3d at 367 (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 9984, 988 (4th Cir. 1992)). Under this method, courts must determine the lodestar amount by multiplying the hours reasonably expended by the reasonable hourly

rate. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In determining the lodestar amount, courts consider twelve factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 321. Moreover, a fee is reasonable where it comports with the prevailing rates charged by lawyers of "reasonably comparable skill, experience, and reputation" for similar services. *Duprey*, 30 F. Supp. 3d at 412 (internal quotation marks and citation omitted). While the fee tables in the Local Rules do not create any presumptions regarding what may be reasonable, the Court may consider them when determining what is reasonable in a given case. *See De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 753-54 (4th Cir. 2025).

As an initial matter, Plaintiff's counsel provides sufficient, detailed records for the Court to assess the reasonableness of their fees. *See* ECF 17-2. Counsel provided their billing rates as follows: Omar Vincent Melehy ($695.00); Suvita Melehy ($645.00); Andrew Balashov ($465.00); and Paralegals and Law Clerks ($245.00). ECF 17, at 9. While the Joint Motion does not set forth in detail the attorneys' experience, the Court draws on recent decisions noting the following: Mr. Omar Vincent Melehy has 37 years of experience, Ms. Suvita Melehy has 28 years of experience, and Mr. Andrew Balashov has

8 years of experience.[2] *Acker v. Craig Testing Labs. of Md.*, No. AAQ-24-1945, 2025 WL 254800, at *4 (D. Md. Jan. 21, 2025). In total, eight individuals representing Plaintiff spent 42.8 hours on this case. ECF 17-2, at 7. After a 5.8-hour reduction, counsel billed Plaintiff for 37 hours for a total of $15,618.50. Adding in $899.75 in costs, the total before settlement reached $16,518.25. As part of the settlement, counsel agreed to accept $3,518.25 less than their proposed lodestar figure.

With respect to the reasonableness of the attorneys' fees, the Court observes that Plaintiff's counsel frequently appear before this Court in FLSA matters and have significant experience in this area. *See, e.g.*, *Acker*, 2025 WL 254800, at *3. In their other cases, counsel have asserted hourly rates close to those outlined in the Joint Motion.[3] Those rates have been approved, at least in part, due to joint motions like the one before the Court. A FLSA settlement agreement "warrants higher rates due to the consent of the parties." *Guzman*, 2025 WL 756645, at *4. On that basis, the Court has found Plaintiff's counsel's rates reasonable in FLSA cases where the parties agreed to attorneys' fees by a

---

[2] This recitation of facts from an unrelated opinion should not be interpreted as approval of or justification for an attorney excluding information about experience in their fee requests. Nor should it be taken as indicative that such facts would be appropriate for judicial notice. Instead, the Court notes these facts identified in other opinions from this District for the sake of efficiency rather than deny a joint motion that will be granted based on consent regarding fees and reasonableness and fairness on other matters, as explained herein.

[3] In each case, the Court recognized these rates as higher than those in the Local Rules fee matrix. *See Guzman v. KP Stoneymill, Inc.*, No. 20-2410-PX, 2025 WL 756645, at *3 (D. Md. Mar. 11, 2025); *Camara v. Black Diamond Rest. LLC*, No. 23-1782-AAQ, 2024 WL 4644635, at *3 (D. Md. Oct. 31, 2024); *Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, No. PWG-17-2261, 2022 WL 16709764, at *5 (D. Md. Nov. 4, 2022); *Sutton*, 2025 WL 385773, at *4; *Acker*, 2025 WL 254800, at *4; *Zuniga*, 2025 WL 241000, at *5; *Menendez*, 2024 WL 5126733, at *6; *Flores*, 2024 WL 2863575, at *6; *Hernandez*, 2023 WL 7089919, at *7. As noted above, the fee tables do not establish what is presumptively reasonable.

settlement agreement.  *See Sutton*, 2025 WL 385773, at *4, *Acker*, 2025 WL 254800, at *4; *Zuniga*, 2025 WL 241000, at *5; *Menendez*, 2024 WL 5126733, at *6; *cf. Guzman*, 2025 WL 756645, at *4 (examining and reducing rates where defendants—who defaulted while the case was in discovery—did not respond to plaintiff's fee motion); *Camara*, 2024 WL 4644635, at *4 (reducing fee rates where parties reached agreement on wages but not on attorneys' fees).  Like in *Sutton*, *Acker*, *Zuniga*, and *Menendez*, Defendants' consent—made with the assistance of counsel—favor a finding of reasonableness.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Joint Motion to Approve FLSA Settlement Agreement and Plaintiff's Motion for the Court to Retain Jurisdiction.  A separate Order shall issue.

Date: December 5, 2025

_____/s/_____
Charles D. Austin
United States Magistrate Judge
